[Decided February 4, 1887.]

## A. GARDELLA, WILLIAM WAGNER, AND A. S. FARQUHARSON *v.* E. MEEKER.

1. TRUSTS — TRANSACTION WITH BENEFICIARY — VALIDITY — FRAUD. — J. W. and M. W., husband and wife, dying left a daughter, M. I. W., as their sole heir. Though there were no debts owing by the estate, defendant, a neighbor and friend of the parents, became administrator for the sole purpose of collecting rent, and recovering possession of certain land. Soon afterwards he procured from the heir a lease of the land, and before that expired he procured an extension. *Held,* that defendant became trustee for the heir, and was estopped from denying that he was trustee, and that the lease was void, as contrary to public policy, even in the absence of fraud, at the mere will and option of the beneficiary.

2. SAME — DURATION OF TRUST — CONFIDENTIAL RELATIONS. — Defendant claiming that the extension was after the trust relation had ceased, *held,* that it appearing that he had been trustee of both father and mother, and administrator of both, and as a friend of the family, they and the

daughter had put their trust in him, and he had by virtue of the trust possession of the property; that the daughter was far away, and had no personal knowledge of her rights, that her correspondence in regard to the property was solely with him, and the relation of trust and confidence continued to the time of the extension.

3. SAME — FRAUD — PPESUMPTION. — In such a case, fraud for which the lease would be voidable will be presumed; and in the absence of the strongest proof of good faith and want of fraud, the presumption will not be rebutted.

4. SAME. — AVOIDANCE OF CONTRACT. — The daughter having conveyed the land to plaintiffs by a warranty deed, this act avoided her lease, and all rights of defendant, and the title of plaintiffs gave them the right to recover.

APPEAL from the District Court holding terms at Tacoma. Second District.

The complaint alleged that in November, 1882, one Mary I. Walker was owner and in possession of the real estate described in complaint, and that on that day she sold it to plaintiffs for five thousand dollars, executing a deed for the same with full covenants of warranty, and that defendant wrongfully claimed to own the land. Prayer for possession, damages for withholding, and judgment for rents, issues, and profits. Defendant in his answer admitted seisin in Walker and execution of deed to plaintiffs by Walker, but denied all other allegations. For new matter, defendant pleaded a lease by Walker to defendant, dated March 1, 1880, whereby she leased said premises to defendant from said date until March 1, 1883, on the conditions stated in the lease, Walker reserving the right to terminate the lease at the end of each year upon giving three months' notice to defendant; and that on October 21, 1881, the lease was extended by agreement in writing from October 21, 1881, until March 1, 1886, and that the lease and extension were duly recorded; and that under the lease defendant went into possession, and with plaintiffs' knowledge made permanent improvements on premises prior to plaintiffs' deed, and that defendant duly complied with all the conditions of the lease. Plaintiffs for reply averred that Mary

I. Walker acquired title to premises by descent, on death of her father, John Walker, in December, 1869, and that she, being an infant at said date, removed from the territory to the Atlantic states, where she resided ever since. That in April, 1879, defendant was appointed and qualified as administrator of John Walker's estate in this territory, and acted in that capacity until July, 1880, and as such administrator, and also as agent for Mary I. Walker, undertook to care for and manage the property for her interest and advantage. That Mary I. Walker at the time of her father's death was only eleven years of age, and at no time since and up to the time hereafter stated had any knowledge or means of knowledge of the condition or value of said premises or of its rental value, but reposed entire confidence in defendant, and in his statements concerning the premises, and the value of the same, and depended on him for information and guidance in her actions relating thereto, all of which was known to the defendant. That while acting as such administrator and agent, defendant represented to her that former occupants of premises were in arrears of rent, and that he had taken possession; that premises were of little value and would be difficult to rent, but that he would pay two hundred dollars per annum rent for three years; and that defendant sent to her for execution the lease set forth in his answer, and that she, relying upon defendant's representations, signed the lease. That similar false representations were made to her by defendant when he procured an extension of the lease in October, 1881, and that she did not discover the fraud, concealment, and misrepresentations of defendant until November 29, 1882, whereupon she demanded of defendant the cancelation of the lease and extension, which he refused. That Walker thereupon sold and conveyed the premises to plaintiff Gardella by warranty deed against all encumbrances, who thereafter sold an undivided half to plaintiffs Wagner and Farquharson.

After trial the court found as follows: 1. That at the time of the making of the so-called lease from Mary I. Walker to the defendant, to wit, on the first day of March, 1880, whereby said Mary I. Walker purported to demise and lease unto the said defendant, Ezra Meeker, the premises in controversy and described in the complaint herein, the said defendant was acting in the double fiduciary capacity of administrator of the estates of John Walker, deceased, and Margaret Walker, deceased, of both of which estates the said Mary I. Walker was an heir, and was also the agent of the said Mary I. Walker. 2. That at the time of the execution of the so-called extension, to wit, on the twenty-first day of October, 1881, the said defendant, Ezra Meeker, was acting as the agent of the said Mary I. Walker. 3. That the said defendant did not, either at the time of the making of the so-called lease or at the time of the making of the so-called extension, so fully disclose the facts relative to the said premises to the said Mary I. Walker, as to enable her to contract intelligently and prudently in reference thereto, nor had she been informed by anybody of the facts necessary to give her an intelligent and correct idea of the character and value of the land described in the so-called lease and extension; her agent, the defendant herein, was fully informed in regard to these matters, but she had little or no knowledge in reference thereto, having been absent and away from said premises for a long period of time. 4. That if said Mary I. Walker had been fully apprised and advised of the real situation of affairs, and of the nature and value of said land and premises, she would not have executed either said so-called lease or said so-called extension. 5. That on the first day of May, A. D. 1883, the said Mary I. Walker by warranty deed duly conveyed to the plaintiff A. Gardella the land and premises in controversy, more fully described in the complaint herein, and that thereafter, and before the commencement of this action, to wit, on

the fourth day of August, 1883, the said A. Gardella duly conveyed by deed an undivided one half of said premises to the plaintiffs, William Wagner and A. S. Farquharson. 6. That after the conveyance of said premises to the plaintiffs as aforesaid, and before the commencement of this action, the said defendant claimed said property and premises as his own, adversely to and in defiance of the title of and claim of the plaintiffs. 7. That the amount due plaintiffs from defendant, at the date of these findings, for the use and occupation of said premises, is equal to and is balanced by the value of the improvements made on said premises by the defendant. And from the foregoing facts the court found the following conclusions of law: 1. That the said so-called lease and so-called extension, and each of them, were at all times voidable, and were duly disaffirmed and avoided within the proper time by the said Mary I. Walker and her said grantee, the plaintiff Gardella. 2. That the said plaintiffs are now, and were at the time of the commencement of this action, the owners in fee-simple of said premises, and were at the date of the commencement of this suit, and are now, entitled to the immediate possession of the same. 3. That the claim of the plaintiffs for use and occupation of said premises, from the date of the purchase thereof by said Gardella as aforesaid to the date of the commencement of this action, should be set off against the claim of the defendant for improvements under said so-called lease and said so-called extension, each against the other. 4. That plaintiffs are entitled to a judgment against the defendant for the immediate possession of said premises and for their costs herein. Judgment was rendered accordingly, from which defendant appealed.

*Messrs. McNaught, Ferry, McNaught, & Mitchell,* and *Mr. Frank O. Meeker,* for the Appellant.

As against any imputations of actual fraud the original lease was valid. Mary I. Walker was of age when she

made it.   She was acting under the advice and guidance
of her uncle and guardian, and the executor of her
mother's will.   The lease was fair and for her benefit.
The administration was for a special purpose, and did
not constitute appellant the agent or trustee of Mary I.
Walker.   But the original lease had expired when this
action was begun, and appellant claims under and relies
upon the extension.   The extension, as well as the origi-
nal lease, was entirely fair and equitable, and for the
benefit and advantage of Mary I. Walker, and in obtain-
ing it appellant made no false or fraudulent representa-
tions, and practiced no concealment, and was guilty of
no unfair or inequitable conduct, and exercised no im-
proper or undue influence over Mary I. Walker.   Even
if appellant was the agent or trustee of Mary I. Walker,
he might properly lease the land of her if the lease *was
in all respects fair,* and it was her intention to lease to
him.   (*Johnson* v. *Bennett,* 39 Barb. 237; *Graves* v. *Water-
man,* 69 N. Y. 657; 1 Perry on Trusts, sec. 195; *Brannan*
v. *Oliver,* 19 Am. Dec. 37–44; *Lindsay* v. *Lindsay,* 1
Desaus. 567; *Anderson and Starke* v. *Fox,* 2 Hen. & M.
245; *Tomlinson's Ex'rs* v. *Detestatius's Ex'rs,* 2 Heyw.
(N. C.) 284; *Van Dyke* v. *Johns,* 12 Am. Dec. 82; *Mar-
shall* v. *Stephens,* 47 Am. Dec. 604; *Coffee* v. *Ruffin,* 4
Cold. 514; *Farnam* v. *Brooks,* 9 Pick. 212, 224–226, 234,
241; *Harrington* v. *Brown,* 5 Pick. 519, 521.)   The exten-
sion was not void.   (2 Pomeroy's Eq. Jur., secs. 915, 955,
957, 958.)   If it was voidable, Mary I. Walker had the
option of treating it as binding upon the appellant.   She
exercised this option, accepted the benefits, and was
estopped from disputing its validity.   (Bigelow on Es-
toppel, 574, 575; *Pursly* v. *Hays,* 17 Iowa, 310; *Deford* v.
*Mercer,* 24 Iowa, 118.)   The reply is insufficient, in this,
that it is not stated therein that appellees paid anything
for said land, or that their purchase was made in good
faith.   (2 Pomeroy's Eq. Jur., secs. 762, 785, 745.)   Ap-
pellees, when they bought said land and received said

conveyances, had actual and constructive notice of appellant's lease, and his rights and claims thereunder, and took said land subject to all such rights. They had constructive notice of appellant's interest from the record of the extension. (Code, sec. 2323.) They also had constructive notice from the examination of the county records by Gardella's attorney. (Wade on the Law of Notice, secs. 31–33; *Barnes* v. *McClinton*, 3 Pa. 67; *Fisk* v. *Potter*, 39 N. Y. 70; 2 Pomeroy's Eq. Jur., secs. 666, 670.) Knowledge of the record of an instrument not entitled to record, and whose record would not be constructive notice, may be actual notice. Wade on Notice, secs. 4, 12; *Musgrove* v. *Bonser*, 5 Or. 313; 2 Pomeroy's Eq. Jur., sec. 600; *Music* v. *Barney*, 49 Mo. 458; *Gilbert* v. *Jess*, 31 Wis. 110; *Hastings* v. *Cutter*, 24 N. H. 471.) The possession of appellant, if known to appellees, was constructive notice of appellant's interests. If appellees failed to pursue the inquiries suggested by such possession, the presumption of notice becomes absolute and conclusive. (*Brown* v. *Volkening*, 64 N. Y. 76; *Moss* v. *Atkinson*, 44 Cal. 3, 17; *Killey* v. *Wilson*, 33 Cal. 690; *Rodgers* v. *Hussey*, 36 Iowa, 664; *Noyles* v. *Hall*, 97 U. S. 34; 2 Pomeroy's Eq. Jur., sec. 614; Wade on Notice, secs. 277, 278.) Appellees' opportunities for knowledge of appellant's interests in said land were such that unless they were willfully blind they must have had full knowledge. Appellees cannot claim to be *bona fide* purchasers unless they paid for said land *before* receiving notice of appellant's claims and interests. (2 Pomeroy's Eq. Jur., secs. 691, 750, 753; *Penfield* v. *Dunbar*, 64 Barb. 239; *Kitteridge* v. *Chapman*, 36 Iowa, 348; *Villa* v. *Rodriguez*, 12 Wall. 338.)

*Mr. Thomas Burke*, and *Mr. John P. Judson*, for the Appellees.

It is a rule of universal application that no person can be permitted to purchase an interest in property where

he has a duty to perform which is inconsistent with the character of purchaser. This rule is applied to all classes of persons standing in fiduciary relations, or in relations of confidence. It therefore prohibits a party from purchasing that on his own account which his duty or trust requires him to manage for the best interest of others. He is not allowed to unite the two opposite characters of buyer and seller, because his interests, when he is the buyer on his own account, are directly conflicting with those of the party for whom he acts. This general rule of law applies to guardians, trustees, attorneys, agents, executors and administrators, and all others standing in like confidential and fiduciary relations. (Tiffany and Bullard on Trusts, pp. 142–149; Story's Eq. Jur., secs. 308, 315, 316, 321; Story on Agency, sec. 210; 1 Lead. Cas. Eq. 149–162; *Michand* v. *Girod*, 4 How. 503; S. C., 16 Curtis, 188; *Glover* v. *Ames*, 8 Fed. Rep. 356.) An executor or administrator is in equity a trustee for the next of kin, legatees, and creditors, and we have been unable to find one well-considered decision with other cases, or any one case in the books to sustain the right of an executor to become the purchaser of the property which he represents, or any portion of it, though he has done so for a fair price without fraud at a public sale. (*Michand* v. *Girod*, 4 How. 503.) The lease and extension constitute but one contract. After Meeker was discharged as administrator of her father's and mother's estate, he made the request for the extension of this lease. No settlement had been had between them,—she still trusted him. She still had confidence in his advice. Just arriving at age, and having no knowledge of the condition of affairs here, knowing little of business, what is more natural than that she should yield to his importunities. Nothing had occurred to shake the confidence and trust reposed. His influence over her still existed, and their business matters still remained unsettled. These undisputed facts

bring the contract extending the lease under the same rules of law applicable to the lease. (Story's Eq. Jur., sec. 317–320; *Richardson* v. *Sinney,* 7 B. Mon. 571; *Andrew* v. *Jones,* 10 Ala. 400; *Wright* v. *Proud,* 13 Ves. 136; *Hylton* v. *Hylton,* 2 Ves. 548; *Pierce* v. *Warring,* 1 Ves. 380; *Wood* v. *Douns,* 18 Ves. 126; *Hatch* v. *Hatch,* 9 Ves. 297; *Van Epps* v. *Van Epps,* 9 Paige, 237.) MaryWalker had the right to avoid this contract, either by deed or by insisting upon the trust relationship, the fraud and deception practiced upon her, whenever Meeker set up the lease or extension for the purpose of claiming rights under it. (*Eagle Fire Co.* v. *Sent,* 6 Paige, 635; Taylor's Landlord and Tenant, secs. 94–98; Tyler on Infancy, 70; 7 Wait's Actions and Defenses, 143; 2 Pomeroy's Eq. Jur., secs. 618, 625, 664; *Tucker* v. *Moreland,* 10 Pet. 58.)

Mr. Justice LANGFORD delivered the opinion of the court.

The defendant, Ezra Meeker, was neighbor and friend of one John Walker and his wife Margaret in 1869, when Walker died. Mary I. Walker, the grantor and lessor, was then a child of eleven years, the daughter of John and Margaret Walker. The mother with her said daughter left the territory and migrated to New Jersey, and afterwards to New York. In June, 1876, the mother died. Neither the estate of the husband nor wife was in debt. On the 26th of April, 1879, Ezra Meeker took out letters of administration for the sole purpose of collecting rent and recovering possession of the land in question. While acting as such administrator, on March 1, 1880, he procured from the sole heir, Mary I., his first lease, which he claims was the beginning of his term, by virtue of which he now claims to hold. After he was thus in possession for a term of three years, and when that lease had still a year to run, on October 1, 1880, he procured his second lease of extension, which, if not terminated by the revocation of Mary I., is the

title by which he now claims.   In January, 1883, Mary
I. did what she could to revoke these leases and termi-
nate the term.   She went so far as to bring an action for
that purpose in New York.   Defendant still held against
her will, but she accepted a small amount of rent from
him afterwards.   Not succeeding in gaining possession,
Mary I., on the twenty-ninth day of November, 1882, by
deed conveyed to one of the plaintiffs this land, war-
ranting against all encumbrances.   The grantee, having
taken possession of part of the land thus conveyed to
him, gave notice to the defendant of his title, and notice
to the defendant to surrender the part of the premises
which defendant occupied.   The defendant refusing, an
action was brought; a jury appears to have been waived
by the consent of the parties that the case should be
tried upon the equity side of the court.   After the
pleadings were perfected and the evidence was taken,
and the cause duly submitted, the court found its con-
clusions of fact and of law, and entered a judgment and
decree for the plaintiffs for possession and accounting
for rent.

The evidence, after being carefully examined, appears
to warrant all the conclusions of fact found.   These
facts are sufficient to sustain the judgment.   Were this
not so, there is a defect fatal to the defendant's right,
which is shown by the evidence.   While it is admitted
that there were no debts owing by the estate, yet letters
of administration were taken out by defendant.   This
*ipso facto* made him trustee for the heir, or at least he is
estopped from denying that he was such.   Indeed, there
being no creditors of the estate, administration and the
expenses thereof was unnecessary, if not illegal.   While
thus trustee of Mary I., he procured the first lease from
her.   The defendant after this procured what is called
the extension of the lease.   It is claimed that this was
an act done after the trust relation had ceased.   When
it is considered that he had been the trustee of father,

mother, and administrator of both father and mother, and that Mary I. had known him as such and as a friend of the family, and they and she had put their trust in him, and he had by virtue of that trust possession of the property, and that Mary I. was all the time a long distance from the territory, and could have had no personal knowledge of her rights; that there was a constant correspondence between the defendant and her, and no proof that she had any other agent,—this continued the relation of trust and confidence until after the pretended extension. Without doubt it was from defendant's advice that both the lease and extension were executed. He sent them to her to have her execute them. This would place the defendant as an adverse party while he was trustee. The law will not permit a trustee to place himself thus in antagonism with his duty, or permit a man to be thus trusted to do wrong. A contract made between parties thus situated is void, because contrary to public policy, in the absence of all fraud, at the mere will and option of the beneficiary. Were it void only upon the ground of fraud, yet such fraud would be presumed in the absence of all evidence. The proof of good faith and absence of fraud would have to be proven by the strongest evidence, before such a presumption would be rebutted. The defendant has failed to produce this evidence. Then Mary I. could at any time, by the mere exercise of her will, avoid and annul the term and the leases. She did this before the conveyance to plaintiff, and she did it by the terms of her conveyance to plaintiff. This exercise of her will having terminated all rights of defendant to possession, the admitted title of the plaintiffs gives them the right to recover.

We find no error in the proceedings and judgment of the District Court, and the judgment should be affirmed with costs, and it is so ordered.

GREENE, C. J., and TURNER, J., concurred.